**HUSSEY COPPER, LTD.,
et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

Wieland–Werke AG, et al., Defendant–
Intervenors.

**WIELAND–WERKE AG, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

Hussey Copper, Ltd., et al.,
Defendant–Intervenors.

Court No. 91–12–00919.
Slip Op. 94–81.

United States Court of
International Trade.

May 16, 1994.

Collier, Shannon, Rill & Scott, David A. Hartquist, Jeffrey S. Beckington and David C. Smith, Jr., Georgetown Economic Services, Michael A. Hudak, Washington, DC, Consultant, for Hussey Copper, Ltd., et al.

Arnold & Porter, Richard A. Johnson and Susan G. Lee, Washington, DC, for Wieland–Werke AG, et al.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark E. Montalbine, U.S. Dept. of Commerce, David J. Ross, Washington, DC, of counsel, for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Before the court are the final results of redetermination by the Department of Commerce dated January 10, 1994, regarding the 1986–88 administrative review of the antidumping duty order on *Brass Sheet and Strip From the Federal Republic of Germany,* 56 Fed.Reg. 60,087 (Dep't Comm.1991) (final results), as amended, 57 Fed.Reg. 276 (Dep't Comm.1992). Commerce's redetermination was issued pursuant to the court's remand order in *Hussey Copper, Ltd., et al. v. United States,* 17 CIT ——, 834 F.Supp. 413 (1993), which instructed Commerce to (1) provide an explanation for its departure from its normal practice of making exact alloy matches in determining such or similar merchandise; (2) provide evidence justifying the use of the long-term interest rate for the consignment credit expense or, in the alternative, redetermine the interest rate to be used and, if necessary, redetermine credit expenses on consignment inventory so as to avoid any double counting; (3) correct the miscalculation in the deduction of home market commissions with respect to purchase price sales; (4) correct errors in its computer program with respect to inland freight insurance charges; (5) provide reasons for its finding that Wieland's constructed price on split-priced sales was unrepresentative of actual prices charged, and determine whether Commerce actually added the value of early payment discount and metal discount to non-split-priced sales and, if so, explain the reasons for so doing or correct the error if it was done by error; (6) reconsider its resort to the best information available (BIA) in calculating the imputed credit expenses or, in the alternative, provide further explanation for such application; and (7) correct the computer error in making the adjustment for merchandise further processed in the United States. Plaintiffs in this consolidated action, Hussey Copper, Ltd., et al. ("Hussey") and Wieland Werke AG, et al. ("Wieland"), submitted their comments on Commerce's rede-

termination, to which defendant United States filed its response.

## DISCUSSION

This court shall uphold Commerce's final determination in an administrative review unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

### 1. Matching Methodology

█ In order to determine which merchandise sold in the home market was most similar to that sold in the United States, Commerce established separate categories of most similar merchandise based on five primary characteristics of the merchandise: (1) form of material (sheet or strip), (2) coating (tinned or non-tinned), (3) grade (alloy composition), (4) gauge, and (5) width. To match the merchandise on the basis of alloy composition, Commerce divided the merchandise into two groups according to whether it contained more than 75% copper and, after the grouping, made adjustments for differences in alloys within each group. By adopting the alloy grouping method, however, Commerce departed from its prior practice of using exact alloy matches in brass cases. The court requested Commerce to explain its reasons for the departure.

In its redetermination, Commerce states: Our review of the record indicates that there is no reasonable explanation of why we departed from our traditional matching methodology for this particular case. Although we still believe this alternate approach is reasonable, we cannot find any unique circumstances in the record which justify this alternate approach to product matching. Accordingly, the Department has concluded that it should abandon the grouping methodology, and instead make matches on an exact alloy basis.

*Redetermination,* at 3. In order to apply the traditional alloy matching method, Commerce asks that it be permitted to request additional information from Wieland. *Id.*

Both Hussey and Wieland point out that Commerce already possesses the data of specific alloy CDA (Copper Development Association) designation necessary to match home market and U.S. sales on an exact alloy basis. To the extent that exact alloy matching is not feasible for certain sales, Hussey argues that Commerce should resort to BIA since Wieland failed to provide cost data for differences in alloys as Commerce had requested. Wieland, on the other hand, urges that if a re-opening of the record is necessary, it should be limited to the precise information necessary to make exact alloy matches.

In response to Hussey's argument for applying BIA, Commerce states that because its decision to make exact alloy matches was made late in the proceedings, the use of BIA will not be appropriate. Therefore, Commerce concludes that it is in the interest of fairness that Wieland be given one more opportunity to provide the information. The court agrees.

Accordingly, the issue is remanded to Commerce for it to conduct the product matching on an exact alloy basis. Commerce may request additional information from Wieland to the extent that such information is necessary to complete the product matching based on the revised methodology.

### 2. Credit Expense on Consignment Inventory

█ In computing home market price, Commerce deducted Wieland's credit expense for maintaining consignment inventory, which was calculated on the basis of Wieland's long-term borrowing rate. The court remanded this matter to Commerce to provide record evidence supporting the use of the long-term interest rate and to determine whether it had double counted Wieland's credit expense for consignment sales to the extent the credit expense covering the period of time from billing to payment was also included in Wieland's imputed credit ex-

pense calculated on the basis of a short-term interest rate.

In its redetermination, Commerce states that it is "unable to point to any evidence on the record that supports the use of a long-term interest rate other than that contained in a confidential memorandum ... which has been rejected by the court in this remand." *Redetermination,* at 4. In addition, Commerce concludes that "based on the record, we cannot determine whether credit expenses have been double counted for consignment sales." *Id.* Commerce requests, therefore, that it be permitted to obtain additional information to resolve these issues.

The court grants Commerce's request for obtaining additional information showing (1) the consignment sales during the period of review, (2) the shipping and payment dates for those sales, and (3) the method of calculating the long-term interest rate and applying it to the sales in question.

### 3. Computer Errors

The court instructed Commerce to correct three computer programming errors involving home market commissions, inland freight insurance charges, and further processed U.S. sales. Commerce states in its redetermination that the submission of new data by Wieland regarding exact alloy matching and credit expense on consignment inventory would moot the issue of existing computer errors to the extent that re-programming would be required.

The court directs Commerce to correct all the computer errors, if any, after it makes the necessary re-programming.

### 4. Split-Priced Sales

Wieland was unable to report actual metal prices charged to home market customers purchasing on a split-priced basis because it did not keep records of the metal prices for individual split-priced sales. In response to Commerce's request for actual prices charged, Wieland submitted a constructed price which consisted of the official German metal price in effect on the date of sale plus the fabrication price and minus the value of a metal discount and an early payment discount. Commerce rejected Wieland's constructed price and, as BIA, accepted petition-er's information with respect to the total sale price and added the value of the two discounts back into each home market sale. Commerce explained that it used the BIA because Wieland failed to provide the actual metal price charged and failed also to provide "an acceptable constructed price that was representative of actual prices charged." *Final Results,* 56 Fed.Reg. at 60,091 (Comment 12).

The court held that since Wieland was unable to produce the actual prices as requested, Commerce was required by the statute to use BIA in this situation, and that Commerce was not bound by the methodology verified and accepted in the LTFV investigation if it had reason to believe that a different methodology would permit a more accurate assessment of current margins. *Hussey,* 834 F.Supp. at 424–25. However, the court also found that it was unable to determine whether Commerce's rejection of Wieland's constructed price and its application of BIA were supported by substantial evidence on the record and were in accordance with law, because Commerce did not explain why it found Wieland's constructed price unrepresentative of actual prices and why the value of the two discounts should be added to all home market sales rather than to the split-priced sales only. *Id.* at 425–26. Accordingly, the court remanded the issues to Commerce for further explanation or correction.

### (a) Rejection of Constructed Price

■ In its redetermination, Commerce states:

Because Wieland's constructed price methodology of using the official German metal price in effect on the date of sale as the metal price component of the split-priced sale has no relationship (unless accidentally), to what the customer actually paid for the metal (because the customer actually bought the metal earlier, and metal prices fluctuate), the Department rejected Wieland's constructed prices. *Since only Wieland has information on what customers actually paid for the metal, Wieland was obliged to provide its best estimates of these costs based on its own records.*

Since the firm failed to do so, the Department was correct in rejecting the official German metal prices.

*Redetermination,* at 6 (emphasis added).

Commerce apparently believes that there is a better method to construct the metal costs than the one used by Wieland and that Wieland was obliged to use that better method. Wieland, however, had no reason to believe that its method did not provide the "best estimates" of the metal cost, since the same method had been accepted and verified by Commerce in the previous investigation and Commerce never indicated during the proceeding of this administrative review that Wieland's method was unacceptable. The record shows the only inquiry Commerce made concerning the split-priced sales was a request for "actual prices." Pub.R. Roll 1, Frame 1133 (*Supp. Questionnaire,* Q. 16, Feb. 22, 1989). Having accepted the necessity of using constructed prices, however, Commerce must communicate to Wieland its requirements for constructing the prices and provide Wieland an opportunity for compliance before it may properly reject Wieland's method. *See Daewoo Elecs. Co., Ltd. v. United States,* 13 CIT 253, 266, 712 F.Supp. 931, 945 (1989) (before Commerce may find any non-compliance "there must be a clear and adequate communication requesting the information").

Accordingly, the court instructs that Commerce shall provide Wieland an opportunity to reshape its reporting methodology. In communicating with Wieland, Commerce should be specific about its requirements for constructing the metal prices and explain, in particular, what it means by "best estimates of these costs."

**(b) Adding Value of Two Discounts to All Home Market Sales**

In the final results, Commerce added the value of metal discount and early payment discount to all home market sales as BIA because of Wieland's failure to demonstrate that the two discounts were actually received on split-priced sales. *Final Results,* 56 Fed. Reg. at 60,091 (Comment 12). The court instructed Commerce to explain its reason for adding the value of the two discounts to all home market sales including both split-priced and regular sales, or in the alternative, to correct error if it was done by error. In its redetermination, Commerce responds to the court's instruction in one sentence:

since the Department was not satisfied that Wieland had accurately and adequately reported the two discounts in question in that Wieland was unable to determine which sales and products actually received the discounts, the Department was also correct in disallowing these adjustments for both the regular and split-priced home market sales.

*Redetermination,* at 6–7.

■ Wieland contends that Commerce's new rationale completely rewrites its reasoning in the final results and is an impermissible post-hoc rationalization. To the extent that an agency's explanation prepared during the course of litigation may be a post hoc rationalization for its decision, such explanation "must be viewed critically" by the court. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 826, 28 L.Ed.2d 136 (1970). "The grounds upon which an administrative order must be judged are those upon which the record discloses that [the agency's] action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943).

■ The final results made it clear that Commerce added the value of two discounts to all home market sales as BIA because Wieland "failed to demonstrate" that the two discounts were received on split-priced sales. *Final Results,* 56 Fed.Reg. at 60,091 (Comment 12). In its redetermination, however, Commerce claims that it disallowed the adjustments for both split-priced and non-split-priced sales because "Wieland was unable to determine which sales and products actually received the discounts." By this newly-offered rationale, Commerce expands the ground for its application of BIA from split-priced sales to all home market sales.

Commerce's new rationale, however, is unsupported by the record. The court has not found, nor has Commerce referred to, any evidence indicating that Wieland was "unable to determine" which sales received the dis-

counts. Rather, the record shows that during the administrative review, Commerce only raised questions regarding the two discounts in general, and never inquired about the discounts on split-priced sales separately from those on all other home market sales. *See* Pub.R. Roll 1, Frame 1135–36 (*Supp. Questionnaire*, Qs. 38–40). As a result, Wieland could not be expected to identify the discounts according to the types of the sales.

Commerce thus has failed to provide a reasonable explanation for its application of BIA to non-split-priced sales. While Commerce had reason to disallow the discounts on split-priced sales because Wieland reported constructed rather than actual prices for split-priced sales, adding the value of the two discounts to all other home market sales as BIA was unreasonable and unsupported by substantial evidence in the record.

Accordingly, the court remands the issue to Commerce for correction. The court notes that Commerce may lack the information necessary to make the correction since it never asked Wieland to identify which sales were split-priced sales. The court directs, therefore, that to the extent additional information is needed to identify the split-priced sales, Commerce should obtain such information from Wieland.

### 5. Imputed Credit Expenses

In the final results, Commerce imputed the credit expenses for both Wieland's home market sales and its U.S. sales, because Wieland incurred no short-term borrowing during the period of review. In response to Commerce's request, Wieland submitted a range of short-term borrowing rates that were made available to it by its banks. In imputing the credit expenses, Commerce used as BIA the lowest interest rate in the range for the home market sales and the highest interest rate in the range for the U.S. sales, on the ground that Wieland failed to supply the actual interest rates. *Final Results,* 56 Fed.Reg. at 60,090 (Comment 8), as amended, 57 Fed.Reg. at 276. In justifying Commerce's application of BIA, Government offered a different rationale, i.e., Wieland had failed to substantiate its reported imputed credit expenses. Government's rationale, however, was rejected by the court as counsel's post-hoc rationalization. *Hussey,* 834 F.Supp. at 427. As Wieland did not incur any short-term financing and therefore had no actual interest rates to report, the court remanded issue for Commerce to reconsider its application of BIA in calculating the imputed credit expenses or, in the alternative, provide further explanation for such application.

Commerce provides its further explanation for the application of BIA as follows:

> The Department requested further information on the source of the figures and the methodology used to determine the imputed credit expense. Wieland failed to supply the requested additional data. Therefore, the Department believes that its use of BIA was correct in this situation.

*Redetermination,* at 7–8.

The record shows that during the administrative proceeding Commerce did ask Wieland to "identify the source of [the] figures" for its claimed adjustments for differences in circumstances of sales, which included its claim for imputed credit expenses. Pub.R. Roll 1, Frame 1136 (*Supp. Questionnaire*, Q. 45). Wieland, however, did not respond to this request with respect to its reported bank interest rates; instead, it merely resubmitted the same information from its original response. *See* Conf.R. Roll 2, Frame 229 (*Questionnaire Response,* Append. B–5(a), June 20, 1988); Conf.R. Roll 4, Frame 1955 (*Supp. Questionnaire Response,* Append. B–5(a), March 13, 1989). Since Wieland failed to provide the additional information as requested, Commerce's application of BIA was in accordance with law. *See* 19 U.S.C. § 1677e(c) (1988). Furthermore, the court notes that although Commerce in the final results cited Wieland's failure to furnish actual interest rates as the reason for its resort to BIA, it was nevertheless aware of the argument that Wieland failed to substantiate its home market credit claim. *See Final Results,* 56 Fed.Reg. at 60,090 (Comment 8). Thus, the court finds that Commerce's further explanation for its application of BIA does not amount to a post-hoc rationalization and is supported by the evidence in the record.

## CONCLUSIONS

In accordance with the foregoing opinion, the court remands the case to Commerce with the following instructions:

(1) Commerce shall conduct the product matching by using the exact alloy model matching method; Commerce may request additional information from Wieland to the extent that such information is necessary to conduct the product matching on the exact alloy matching basis.

(2) Commerce shall redetermine Wieland's consignment credit expense; for that purpose Commerce may obtain additional information from Wieland showing (a) the consignment sales during the period of review, (b) the shipping and payment dates for those sales, and (c) the method of calculating the long-term interest rate and applying it to the sales in question.

(3) Commerce shall correct all computer errors after necessary re-programming is completed.

(4) Commerce shall provide Wieland an opportunity to reconstruct the metal prices on split-priced sales and shall specify its requirements for reporting the constructed prices.

(5) Commerce shall not add the value of metal and early payment discounts to non-split-priced sales as BIA; for the purpose of identifying which sales were split-priced sales, Commerce may obtain additional information from Wieland.

Commerce shall file its remand results with the court within 120 days of this opinion. Any party contesting the remand results shall file comments with the court within 30 days of the remand results. Commerce may file its response within 15 days of the comments.