**ALLIED–SIGNAL AEROSPACE COMPANY, Garrett Engine Division and Garrett Auxiliary Power Division, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee,**

**The Torrington Company, Defendant–Appellee,**

**and**

**Federal–Mogul Corporation, Defendant–Appellee.**

**No. 94–1112.**

United States Court of Appeals, Federal Circuit.

June 30, 1994.

Louis S. Mastriani, Atty., Adduci, Mastriani, Schaumberg & Schill, Washington, DC, argued, for plaintiffs-appellants. With him on the brief was Gregory C. Anthes.

Velta A. Melnbrencis, Atty., U.S. Dept. of Justice, Washington, DC, argued, for defendant-appellee, The U.S. With her on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Stephen J. Powell, Berniece A. Browne and Thomas H. Fine, of counsel.

Frederick L. Ikenson, Atty., Frederick L. Ikenson, P.C., Washington, DC, argued, for defendant-appellee, Federal–Mogul Corp.

Before MICHEL, Circuit Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

Allied–Signal Aerospace Company appeals from the judgment of the United States Court of International Trade affirming the determination on remand of the Department of Commerce, International Trade Administration (ITA), concerning antidumping duty margins for antifriction bearings from France. *Allied–Signal Aerospace Co. v. United States*, 833 F.Supp. 935 (Ct. Int'l Trade 1993). Because the ITA's determination is consistent with our holding in *Allied–Signal Aerospace Co. v. United States*, 996 F.2d 1185 (Fed.Cir.1993) (*Allied–Signal I* ), we affirm the judgment.

## BACKGROUND

In this appeal, we revisit the two-tier methodology utilized by the ITA in determining the best information available (BIA) for a party that "refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes" an antidumping duty investigation. 19 U.S.C. § 1677e(c) (1988). The undisputed facts are recounted here to the extent they are pertinent to the issues on appeal.[1]

Following an investigation into whether antifriction bearings were being, or were likely to be, sold in the United States at less than fair value (LTFV), the ITA issued final orders imposing antidumping duties on antifriction bearings from France on May 15, 1989. The ITA subsequently conducted an administrative review of those orders for the period from November 9, 1988 through April 30, 1990. One of the companies subject to the review was SNFA S.A., a French manufacturer of customized aerospace bearings. SNFA was not one of the bearing manufacturers individually investigated by the ITA in the original LTFV investigation.

In responding to the ITA's request for information relating to SNFA's sales for the period under review, SNFA claimed that it was unable to supply all the requested data due to its limited resources and small sales volume. The ITA consequently resorted to the best information available, which it derived using its two-tier BIA methodology.[2] Deeming the first tier of the methodology to be applicable to SNFA, the ITA assigned duty rates of 66.42% and 18.37% to SNFA's sales of ball bearings and cylindrical roller bearings, respectively. Those rates consti-

---

1. A detailed history of this case is set out in *Allied–Signal I*.

2. The two-tier BIA methodology is as follows:
   1. When a company refused to cooperate with the [ITA] or otherwise significantly impeded these proceedings, we have used as BIA the higher of (1) The highest of the rates found for any firm for the same class or kind of merchandise in the same country of origin in the less than fair value investigation (LTFV) or (2) the highest rate found in this review for the same class or kind of merchandise in the same country of origin.

2. When a company substantially cooperated with our requests for information including, in some cases, verification, but failed to provide the information requested in a timely manner or in the form required, we have used as BIA the higher of: (1) The firm's LTFV rate for the subject merchandise (or the "all others" rate from the LTFV investigation, if the firm was not individually investigated), or (2) the highest calculated rate in this review for the class or kind of merchandise from the same country of origin.

56 Fed.Reg. 31705.

tuted the highest rates assigned to any party from the original LTFV investigation.

Allied–Signal, a domestic importer of anti-friction bearings, challenged the final dumping margins assigned to SNFA. Although the BIA methodology employed by the ITA was ultimately upheld on appeal in *Allied–Signal I,* we disagreed with the ITA's decision to apply the first tier of the two-tier methodology with respect to SNFA. We concluded that application of the first tier was improper because SNFA's failure to provide a complete response to the ITA's request for information was not caused by deliberate recalcitrance, but was due to its inability to provide the data. Because the record indicated that SNFA had substantially cooperated with the ITA, we remanded the case to allow the ITA to "recalculate the dumping margins at issue under the second tier of the two-tier BIA methodology." 996 F.2d at 1193.

The ITA issued its final remand results on July 27, 1993, assigning margins of 65.13% and 17.31% to SNFA's sales of ball bearings and cylindrical roller bearings, respectively. Consistent with the second tier of the BIA methodology, the ITA selected the "all others" rates from the LTFV investigation, which were higher than any rates calculated in the review period for those bearings. Allied–Signal contested the remand results, claiming that they were inconsistent with *Allied–Signal I.* The Court of International Trade sustained the ITA's determination and dismissed the action. Allied–Signal now appeals.

### DISCUSSION

■ Dissatisfied with the results obtained on remand, Allied–Signal once again contests the ITA's application of the BIA methodology to SNFA. Allied–Signal contends that *Allied–Signal I* requires the ITA to use the highest rate calculated for any company in the administrative review as the second-tier BIA rate for a nonresponsive party, such as SNFA, who was not assigned its own rate from the original LTFV investigation. Allied–Signal alleges that on remand, the ITA violated the *Allied–Signal I* remand order by using the "all others" rates.

In support of that contention, Allied–Signal relies on the following passage in *Allied–Signal I:*

> The critical difference in BIA treatment under the first and second tiers lies in the range of LTFV margins subject to consideration as the best information available. Under the first tier, the ITA may consider the margin of *any* company involved in the prior LTFV investigation. *Under the second tier, the ITA may only consider a particular firm's own prior LTFV rate.*

996 F.2d at 1191 (emphasis added). Pursuant to that "order," and focusing on the underscored language, Allied–Signal argues that only the firm's own LTFV rate may be used. It asserts that, failing that, the ITA should have assigned to SNFA the highest rates calculated in the administrative review (*i.e.,* margins of 7.79% and 10.63% for ball bearings and cylindrical roller bearings, respectively), because SNFA was not assigned its own rates from the LTFV investigation.

The position taken by Allied–Signal in this appeal is a poorly disguised attempt to reargue what has already been decided in *Allied–Signal I.* By taking a sentence in the opinion completely out of the context in which it was written, Allied–Signal distorts its meaning and purpose. The paragraph in *Allied–Signal I* upon which Allied–Signal relies is part of a general discussion comparing the two tiers of the ITA's BIA methodology. In that discussion, we recognized that the basic distinction between the two tiers lies in subdivision (1) of each tier. In the first tier, subdivision (1) provides that the highest of the LTFV rates found for any firm can be used. In contrast, subdivision (1) of the second tier limits the applicable LTFV rate to the firm's own rate, assuming there is one. However, the latter subdivision contains an explicit provision instructing that "if the firm was not individually investigated," the "all others" rate from the LTFV investigation is to be considered. The ITA's inability to use the firm's own rate thus does not mandate use of the highest rate calculated in the administrative review.

Allied–Signal makes much of the fact that in analyzing the BIA methodology, we did

not expressly recognize the second tier's "all others" proviso applicable to firms that were not individually investigated in the LTFV investigation. Allied–Signal suggests that in doing so, we amended the second tier to eliminate the proviso altogether. We reject that unjustified reading of *Allied–Signal I.*

In *Allied–Signal I,* we held unequivocally that the "two-tier methodology adopted by the ITA and used in its administrative review of antidumping duty orders is a reasonable and permissible exercise of the ITA's statutory authority to use the best information available when a respondent refuses or is unable to provide requested information." 996 F.2d at 1192. We then clearly directed the ITA to recalculate the dumping margins at issue under the second tier. The ITA's determination on remand is consistent and in accordance with that directive. By reciting the language of the second tier in its entirety elsewhere in the opinion, *see* 996 F.2d at 1188, it should have been clear that we were aware of all of its provisions and did not judicially expunge the proviso by inference. Thus, use of the "all others" rate was not precluded.

■ Alternatively, Allied–Signal argues that the rates assigned to SNFA are not supported by substantial evidence in view of the ITA's failure to provide a reasonable explanation for its application of the "all others" rates from the LTFV investigation. Allied–Signal claims that because the ITA's use of the "all others" rates represents a departure from established agency practice respecting the determination of BIA for nonresponsive parties, the agency was "obligated to supply a reasoned analysis for the change." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). That argument reflects a basic misunderstanding of the nature of the ITA's "BIA policy."

In *Motor Vehicle,* the Supreme Court stated that an agency's decision to revoke an existing regulation promulgated under the rulemaking procedures of the Administrative Procedure Act, 5 U.S.C. § 553, is void as arbitrary and capricious in the absence of a reasoned explanation for the revocation. As is explained below, Allied–Signal's reliance on *Motor Vehicle* in support of its contention that the ITA was required to afford a reasoned explanation for its application of a new BIA methodology is misplaced.

The ITA's selection of the "all others" rates under the second tier of its new BIA methodology was not the type of "change in course" contemplated in *Motor Vehicle* to which a rationale by the agency was required. Unlike the regulation at issue in *Motor Vehicle,* the BIA methodology employed by the ITA in previous investigations did not rise to the level of an agency regulation having the force and effect of law. The fact that the ITA's prior methodology may appear to have been a *de facto* BIA "policy" by virtue of its long-time or consistent use did not preclude the ITA from utilizing a different methodology when, as in the present case, the agency determined in its discretion that the circumstances so warranted.

In issuing the final results of the administrative review, the ITA explained that the determination of the best information available for a nonresponsive party is determined by the agency on a "case-by-case" basis. 56 Fed.Reg. 31705 (Issues Appendix, Section 5: Best Information Available). Here, the ITA concluded that the two-tier methodology was the appropriate means of assessing the best information available for SNFA. That conclusion was upheld in *Allied–Signal I* as consistent with the agency's delegated authority to determine what the best information available is for a particular respondent. *See* 996 F.2d at 1191. In view of the discretionary, case-by-case nature of the agency's BIA determinations, the ITA is obligated only to use a methodology consistent with its statutory authority, and it is not required to supply a "reasoned analysis" justifying its adoption.

## CONCLUSION

The judgment of the Court of International Trade sustaining the agency's determination on remand is affirmed.

***AFFIRMED.***