D & L SUPPLY CO. and Guangdong Metals & Minerals Import & Export Corporation; U.V. International, Sigma Corporation, Southern Star, Inc., City Pipe and Foundry, Inc., Long Beach Iron Works, Inc., and Overseas Trade Corporation, Plaintiffs,

v.

UNITED STATES, Defendant,

Alhambra Foundry Inc., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries, Inc., Charlotte Pipe & Foundry Co., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc., U.S. Foundry & Manufacturing Co. and Vulcan Foundry, Inc., Defendant-Intervenors.

Slip Op. 95–92.
Court No. 92–06–00424.

United States Court of
International Trade.

May 15, 1995.

Cameron & Hornbostel, Washington, DC (Dennis James, Jr.), for plaintiffs D & L Supply Co. and Guangdong Metals & Minerals Import & Export Corp.

White & Case, Washington, DC (Walter J. Spak and Vincent Bowen), for plaintiffs U.V. Intern., Sigma Corp., Southern Star, Inc., City Pipe and Foundry, Inc. and Long Beach Iron Works, Inc.

Ross & Hardies, Washington, DC (Jeffrey S. Neeley), for plaintiff Overseas Trade Corp.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Marc E. Montalbine) Jeffery C. Lowe, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Collier, Shannon, Rill & Scott, Washington, DC (Paul C. Rosenthal, Mary T. Staley and Robin H. Gilbert), for defendant-intervenors Alhambra Foundry Inc., Allegheny Foundry Co., Bingham & Taylor Div., Virginia Industries, Inc., Charlotte Pipe & Foundry Co., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc., U.S. Foundry & Mfg. Co. and Vulcan Foundry, Inc.

## OPINION

TSOUCALAS, Judge:

Plaintiff D & L Supply Company ("D & L") challenges the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand filed in this case, *Iron Construction Castings From the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand, Slip Op. 93–245 ("Remand Results")*. Specifically, D & L contests as unreasonable and an abuse of discretion Commerce's use in this case of the rate from the preceding review of iron construction castings from the People's Republic of China as best information available ("BIA"), notwithstanding that Commerce recalculated the margins in the preceding case.

### Background

In *D & L Supply Co. et al. v. United States*, 17 CIT ——, 841 F.Supp. 1312 (1993), the Court remanded this case for, *inter alia,* Commerce to determine whether the original rate from the preceding review of iron construction castings is still appropriate for use as BIA after Commerce had recalculated the dumping margin in the preceding case.

Commerce filed the Remand Results on June 6, 1994. Oral argument was held on August 12, 1994.

### Discussion

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evi-

dence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

Pursuant to this Court's remand, Commerce determined that the BIA provision of the antidumping statute, 19 U.S.C. § 1677e (1988), does not require Commerce to revise the BIA rate used in a review where that rate is subsequently recalculated upon Court order. *Remand Results* at 4. Thus, Commerce found that, although the 92.74 percent rate of the preceding review was subsequently changed on remand, it was not relevant to whether it remains the appropriate rate to rely upon as BIA for this review. *Remand Results* at 17. Accordingly, Commerce continues to rely upon the 92.74 percent rate from the 1989–90 review as BIA in this case. *Remand Results* at 21.

D & L argues that Commerce erred by failing to adjust the rate in the instant case after the rate upon which it was based was changed on remand. D & L contends that Commerce's position that 19 U.S.C. § 1677e(c) does not require revision of the BIA rate used in a review where that rate is subsequently modified as a result of ongoing proceedings effectively ousts this Court of jurisdiction in reviews where BIA is an issue. Moreover, D & L argues that Commerce's refusal to revise its BIA rate alters the purpose of the BIA provision from an investigative tool to a punishment. *Plaintiff D & L Supply Company's Comments on the Commerce Department's Redetermination in Iron Construction Castings From the People's Republic of China/1990–91 ("Plaintiff's Comments")* at 12–14.

D & L interprets the Court's remand instructions in *D & L Supply Co.,* 17 CIT ——, 841 F.Supp. 1312, as requiring Commerce to revise the rate from the prior review and *then* reevaluate the use of the rate from the preceding review. Accordingly, D & L argues Commerce has not followed the Court's remand order. *Plaintiff's Comments* at 5–8.

In addition, D & L claims that the rationale for not responding to a questionnaire because the responses would yield a dumping rate equal to or higher than BIA is not applicable here. D & L contends that the exporter in the instant case did not respond to the questionnaire because it had abandoned the United States market place and had no reason to comply. D & L claims that exporters do not know what margin will be applied because they do not know what methodology will be used for the calculations. D & L argues that, by determining that the BIA rate of 92.74 percent should not be adjusted in this case even though that rate was subsequently reduced to 31.05 percent in the prior review, Commerce adversely affects the U.S. importer, who had no control over the responses to the questionnaire, and not the Chinese exporter who did not respond to the questionnaire. Finally, D & L argues that it is inequitable to assign an 11.66 percent duty to MACHIMPEX Liaoning's imports while assigning a 92.74 percent duty to Guangdong Metals & Minerals Import & Export Corporation ("Guangdong Minmetals"). Alternatively, D & L argues the appropriate rate under Commerce's reasoning would be 45.92 percent, the only final rate at the time the exporters chose not to respond. *Plaintiff's Comments* at 2–4, 10–12.

Commerce urges that its adherence to the 92.74 percent rate originally applied is appropriate as BIA because it upholds the purposes for the BIA rule and overcomes administrative difficulties by barring changes in one period from affecting subsequent review periods. *Defendant's Rebuttal Comments in Support of Remand Results ("Commerce's Rebuttal")* at 4–5.

Commerce defends its redetermination decision by arguing that the exporter was aware that the BIA rate from the final results of the 1989–90 review would be used in this case if those final results were issued before the final results in the instant case. Commerce adds that the exporter decided it preferred to refuse to answer the questionnaire and be assigned the highest prior margin as BIA. Moreover, Commerce argues there is no evidence that the amended rate for the 1989–90 review period more accurately reflects the exporter's pricing practices than the original BIA rate from that review.

Commerce asserts that the rate determined in the instant case is not incorrect but, as the name suggests, based upon the best information available at the time the determination was made. *Commerce's Rebuttal* at 5–8.

Commerce refutes D & L's claim that Commerce's position in this case ousts this Court of jurisdiction where BIA is an issue and argues that the Court's role in a BIA case is to determine whether the exporter failed to respond to an information request and if so, whether the rate determined by Commerce is supported by the administrative record. Furthermore, Commerce contends it used standard methodology to determine the dumping margin, it could not have considered rates that were determined subsequently, and it need not have considered the rates assessed to MACHIMPEX, an exporter that did not receive adequate notice of review. Commerce argues that D & L's argument that the rate is suspect because it and not the non-responding exporter will have to pay the import duties is without merit. *Commerce's Rebuttal* at 7–9.

Finally, Commerce argues that it has adhered to the decision of this Court to "deem whether the rate from the preceding review is still appropriate for use as BIA," *D & L Supply,* 17 CIT at ——, 841 F.Supp. at 1315, and deemed that the original rate from the preceding review is indeed still appropriate. *Commerce's Rebuttal* at 9–10.

Defendant-intervenors, domestic industry, support Commerce's decision to retain the BIA rate of 92.74 percent and assert that, as the BIA rate was appropriate at the time of the final determination, it therefore remains appropriate. Domestic industry, citing *Allied–Signal Aerospace Co. v. United States,* 16 CIT 811, 814, 802 F.Supp. 463, 465 (1992), *rev'd, remanded,* 996 F.2d 1185 (Fed.Cir. 1993), *aff'd,* 28 F.3d 1188 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 722, 130 L.Ed.2d 628 (1995), claims that the BIA rate does not have to be the most accurate rate, but merely a "usable" one when an exporter fails to respond. *Domestic Industry's Comments on the Commerce Department's Remand Results ("Domestic Industry's Comments")* at 1–3.

Domestic industry contends that the only issue that should be before this Court and the only one over which it has jurisdiction is whether Commerce's selection of a BIA rate at the time of its final results was lawful and supported by substantial evidence. In addition, Domestic Industry points out that Commerce's methodology in this case has been upheld by the Federal Circuit in *Allied–Signal Aerospace Co. v. United States,* 996 F.2d 1185, 1191 (Fed.Cir.1993), *aff'd,* 28 F.3d 1188 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 722, 130 L.Ed.2d 628 (1995). *Domestic Industry's Response to Plaintiff D & L Supply Company's Comments on the Commerce Department's Remand Results ("Domestic Industry's Response")* at 4–6.

In challenging D & L's claim of unfairness, the domestic industry argues that who pays the dumping duties is irrelevant to what those dumping duties should be. *Domestic Industry's Response* at 2–3. Domestic industry further argues that if Commerce were required to use an up-to-date amended prior rate as BIA then an importer could control the BIA rate and manipulate the administrative process by simply appealing prior results on which they are based. *Domestic Industry's Comments* at 2. Moreover, domestic industry contends that this would prohibit Commerce from relying on BIA rates from prior reviews, while rewarding non-complying respondents with delays and thwarting Congress' goal of efficiently finishing determinations. *Id.*

Whether Commerce may maintain a BIA rate based upon a margin that has since been recalculated pursuant to Court remand comes before this Court for the first time.

The statute at issue, 19 U.S.C. § 1677e(c) (1988) states:

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and

in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

That Commerce properly resorted to BIA is uncontroverted in this case. Pursuant to its normal methodology, Commerce determined the BIA rate by using:

the higher of: (a) The highest rate assigned to any company in a previous review or the determination of sales at less that [sic] fair value, or (b) the highest rate for a responding company with shipments during the review period. See 19 CFR 353.37(b).

*Certain Iron Construction Castings From the People's Republic of China; Preliminary Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 6,709 (February 27, 1992).

At the time the preliminary results were published, Commerce used the rate of 45.92 percent from the 1988–89 administrative review because it was the highest final rate from a previous review. However, Commerce cautioned this was a preliminary BIA rate:

If we determine to use BIA for the final results of this review, we may change the BIA rate used to reflect the final results of review for a more recent review period, the 1989–90 period, if such final results have been issued by that time.

*Id.* at 6,710. Ultimately, Commerce did use the BIA rate calculated for Guangdong Minmetals in the final results of the 1989–90 review, which was 92.74 percent and published on March 27, 1992. *Certain Iron Construction Castings From the People's Republic of China; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 24,245, 24,246 (June 8, 1992). That rate was subsequently appealed, remanded due to error and recalculated. Pursuant to this Court's decision, Commerce redetermined the dumping rate for the 1989–90 review as 31.05 percent. *Sigma Corp. et al. v. United States,* 17 CIT ——, 841 F.Supp. 1275 (1993).

■ To the extent that legislative history clarifies what Congress intended by best information available it provides only that Commerce "should always use the most up-to-date information available." H.R.Rep. No. 317, 96th Cong., 1st Sess. 77 (1979). Since the legislative history provides little guidance, the Federal Circuit has found that Congress "explicitly left a gap" for Commerce to fill. *Allied–Signal Aerospace Co.,* 996 F.2d at 1191, citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Therefore, this Court must grant Commerce's determination of what constitutes BIA considerable deference. *Id.*

From a general policy perspective as to the scope of this Court's review of Commerce's actions, the Court must give considerable weight to accuracy and "fairness." Commerce's investigations are designed to collect information that is as accurate as possible. *See Florex v. United States,* 13 CIT 28, 33, 705 F.Supp. 582, 588 (1989). Thus, "affirming a final determination *known to be based on incorrect data* would not only perpetuate the error, but would also be contrary to legislative intent." *Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A. v. United States,* 14 CIT 680, 683, 746 F.Supp. 1108, 1111 (1990) (emphasis in original).

"Judicial authority supports granting a request for remand if it fosters and promotes fundamental fairness." *Alhambra Foundry Co.,* 12 CIT at 356, 685 F.Supp. at 1262 (1988), citing *ILWU Local 142 v. Donovan,* 12 CIT 87, 91, 678 F.Supp. 307, 310 (1988). In this regard, the court has upheld the correction of clerical errors which affect the accuracy of a determination. *See, e.g., Koyo Seiko Co.,* 14 CIT at 682, 746 F.Supp. at 1110.

Sometimes Commerce takes an "overly sweeping view of the authority it is granted." *Olympic Adhesives, Inc. v. United States,* 899 F.2d 1565, 1571 (Fed.Cir.1990). Although this Court must accord substantial deference to Commerce's interpretation of a statute it administers, the court is empowered to remand a decision based upon an unreasonable construction of a statute. *Borlem S.A.—Empreedimentos Industriais and FNV—Veiculos E Equipamentos S.A. v. United States,* 913 F.2d 933, 937 (Fed.Cir.1990); *Corning Glass Works v. United States Int'l Trade Comm'n,* 799 F.2d 1559, 1565 (Fed.Cir.1986).

In addition, however, this Court must address the policy concerns specific to the use

of BIA and must, where Congress has been silent, grant considerable deference to Commerce's expertise in its interpretation.

■ First, this Court considers the discretion granted Commerce in resorting to BIA. Commerce may use the BIA rule as "an investigative tool, which that agency may wield as an informal club over recalcitrant parties or persons whose failure to cooperate may work against their best interests." *Atlantic Sugar Ltd. v. United States,* 744 F.2d 1556, 1560 (Fed.Cir.1984). Commerce has flexibility to determine what is best information depending upon the reasons for noncompliance. *Rhone Poulenc, Inc. and Rhone Poulenc Chimie de Base, S.A. v. United States,* 899 F.2d 1185, 1191 (Fed.Cir.1990), *citing* 19 C.F.R. § 353.51 (1988). The best information rule and Commerce's flexibility to apply the non-compliance presumption encourages compliance, in addition to implementing the basic purpose of the statute, which is to determine current margins as accurately as possible. *Id.*

■ Second, this Court considers Commerce's discretion in selecting BIA. Significantly, this Court has stated BIA is not necessarily accurate information; rather, it is information which becomes usable due to a respondent's failure to provide accurate information. *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989), *aff'd,* 901 F.2d 1089 (Fed.Cir.1990), *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990). Commerce's authority to select BIA is limited only by an explanation of a rational relationship between the data chosen and the matter to which it is to apply. *Manifattura Emmepi S.p.A. v. United States,* 16 CIT 619, 624, 799 F.Supp. 110, 115 (1992); *Neuweg Fertigung GmbH v. United States,* 16 CIT 724, 729, 797 F.Supp. 1020, 1024 (1992). Parties that do not participate in antidumping investigations are not entitled to special considerations but must accept any rate which is reasonably accurate based upon the information of record. *Smith Corona Corp. v. United States,* 16 CIT 562, 566, 796 F.Supp. 1532, 1536 (1992).

This Court has already held that Commerce may base BIA on a rate established in a prior review that is subject to challenge. *D & L Supply Co.,* 17 CIT at ——, 841 F.Supp. at 1314. Otherwise, a party could manipulate what could be considered as BIA by merely challenging a prior rate. *Id.*

■ Finally, the Court considers the need for minimizing delay in producing administrative reviews. The BIA provisions were among the "administrative reforms" enacted by Congress in the Trade Agreements Act of 1979, Pub.L. No. 96–39, in an effort to reduce the length of antidumping and countervailing duty investigations, which was often attributable to the delay in the assessment and collection of data. *See* H.R.Rep. No. 317, 96th Cong., 1st Sess. 24 (1979).

■ As the statute is silent regarding the issue in the case at bar, the Court must decide only whether Commerce's construction of the statute is permissible. *Chevron U.S.A.,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Thus, the Court need not find Commerce's interpretation to be the one which the Court views as the most reasonable. *Id.* The Court may not substitute its judgment for that of Commerce when the choice is between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it *de novo. American Spring Wire Corp. et al. v. United States,* 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984), *aff'd,* 760 F.2d 249 (Fed.Cir.1985).

■ Further, this Court may not overturn Commerce's determination merely because D & L produces evidence in support of its own contentions and in opposition to the evidence supporting Commerce's determination. *Tehnoimportexport and Peer Bearing Co. v. United States,* 15 CIT 250, 253, 766 F.Supp. 1169, 1173 (1991). The evidence must be enough to convince the Court that a reasonable mind would not have found Commerce's evidence sufficient to support its conclusion. *Id.*

Because D & L has not presented such evidence, and in light of the policy considerations specific to BIA discussed above, this Court affirms Commerce's remand results.

This Court finds that the original 1989–90 review dumping margin is correct in this case because, at the time the final results were published, that BIA rate was, in accordance with Commerce's BIA methodology, "the highest rate assigned to any company in a previous review." *Certain Iron Construction Castings From the People's Republic of China; Preliminary Results of Antidumping Duty Administrative Review*, 57 Fed. Reg. at 6,709. The Federal Circuit has approved this two-tier methodology, which specifically intends to be harsher with parties that are entirely non-responding. *See Allied–Signal Aerospace Co.*, 996 F.2d at 1191–92. Although the Court recognizes the dramatic difference between the original and subsequently recalculated 1989–90 dumping margin, this Court is not willing to overlook that the non-responding party was aware that BIA would be applied and that the BIA would be the highest rate assigned to any company at the time of the publishing of these final results.

The statutory purpose underlying the BIA provision is to facilitate the determination of dumping margins as accurately as possible within the confines of extremely short statutory deadlines. *Id.* At the time of its selection, the BIA applied in this case was the most accurate and up-to-date, consistent with Commerce's methodology.

This Court also recognizes the need for Commerce to be able to issue final determinations in a timely fashion based upon the rates available at the time the final determination is due. If the Court were to adopt a policy of revising the rates used as BIA to reflect the results of on-going court appeals, Commerce's determinations that involved BIA would be in a state of flux until the end of the appeals process of the determinations on which the BIA rates were based. This the Court is unwilling to do.

Accordingly, the Court hereby affirms Commerce's selection of BIA in this case, the rate determined in the final results of the 1989–90 review, 92.47 percent.

### Conclusion

In accordance with the foregoing opinion, this Court, after due deliberation and a review of all papers in this action, finds that Commerce's actions were in accordance with law and supported by substantial evidence. For the reasons stated above, D & L's motion for a remand is denied and the Remand Results are affirmed. This case is hereby dismissed.

### JUDGMENT

Upon consideration of the redetermination on remand of the Department of Commerce, International Trade Administration ("Commerce"), filed pursuant to *D & L Supply Co. et al. v. United States*, 17 CIT ——, 841 F.Supp. 1312 (1993) ("Remand Results"), and of the comments of all the parties, after due deliberation, it is hereby

**ORDERED** that plaintiff D & L Supply Company's motion for an order to direct Commerce to issue a second redetermination on remand is denied; and it is further

**ORDERED** that the Remand Results are affirmed in all respects; and it is further

**ORDERED** that this case is hereby dismissed.