HUSSEY COPPER, LTD., The Miller Company, Outokumpu American Brass, Revere Copper Products, Inc., International Association of Machinists and Aerospace Workers, International Union, Allied Industrial Workers of America (AFL–CIO), Mechanics Educational Society of America (Local 56), and United Steelworkers of America (AFL–CIO/ CLC), Plaintiffs,

v.

UNITED STATES, Defendant,

Wieland–Werke Ag, Langenberg Kupfer Und Messingwerke GMBH Kg, Mettallwerke Schwarzwald GMBH, and Wieland Metals, Defendants–Intervenors.

Slip Op. 97–25.
Court No. 91–12–00919.

United States Court of
International Trade.

Feb. 13, 1997.

Collier, Shannon, Rill & Scott (David A. Hartquist, Jeffrey S. Beckington and David C. Smith, Jr., Washington, DC), for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (A. David Lafer, on the brief) and David W. Richardson, General Attorney, International Office of Chief Counsel for Import Administration, of counsel, Washington, DC, for defendant.

Arnold & Porter (Richard A. Johnson and Susan G. Lee, Washington, DC), for defendants-intervenors.

## MEMORANDUM OPINION & ORDER

DiCARLO, Senior Judge:

This action arises from the administrative review of an antidumping duty order concerning brass sheet and strip from Germany. Commerce reviewed the activities of five companies between August 22, 1986 and February 29, 1988. *Brass Sheet and Strip from the Federal Republic of Germany,* 56 Fed. Reg. 60,087 (Dep't Comm.1991) (final admin. review), *as amended,* 57 Fed.Reg. 276 (Dep't Comm.1992) [hereinafter *Final Determination* ]. This is the fourth time that the action

has appeared before this court. *Hussey Copper v. United States,* 17 CIT 993, 834 F.Supp. 413 (1993) [hereinafter *Hussey I* ], *appealed after remand,* 18 CIT 454, 852 F.Supp. 1116 (1994) [hereinafter *Hussey II* ], *appealed after remand,* 19 CIT ——, 895 F.Supp. 311 (1995) [hereinafter *Hussey III* ]. As the arguments raised in the current appeal are untimely, plaintiffs' request for yet another remand is denied, and Commerce's latest redetermination is affirmed.

## BACKGROUND

Commerce determines the margin of dumping in an antidumping investigation by comparing prices of United States and home market sales, adjusting for differences whenever the products compared are not identical. 19 U.S.C. §§ 1673, 1677(16), 1677b(a)(1) (1988); 19 C.F.R. §§ 353.2(f), 353.57 (1993). In its third and most recent remand, the court ordered Commerce to revise this comparison by (1) selecting the most similar home market merchandise on the basis of physical characteristics rather than production costs; (2) matching United States sales of specific alloy products with home market sales of specific alloy products; and (3) matching United States sales with contemporaneous home market sales. *Hussey III,* 19 CIT at —— ——, 895 F.Supp. at 314–15.

As in its original *Final Determination,* in each remand Commerce found that some United States sales did not have exact home market matches. The third remand significantly altered this list of unmatched sales. *See Hussey III,* 19 CIT at ——, 895 F.Supp. at 314; (Pls. Reply to Def. Response Opposing Pls.' Request for a Second Remand at 3–4 (12/19/94).) In such situations, Commerce ordinarily compares similar products, then adjusts for differences in the compared merchandise (difmer adjustments). *Final Determination* at 60,089. However, because members of the Wieland Group did not report difmer information needed to make those comparisons, Commerce instead used a best information available (BIA) rate, defined as "the highest weighted-average margin for any member of the Wieland Group[,]" for unmatched sales. *Id.*

Commerce issued a preliminary draft of its latest remand results on October 31, 1995. *Final Results of Redetermination Pursuant to Court Remand: Hussey Copper, Ltd. et al. v. United States, Slip Op. 95–145* (Aug. 11, 1995) [hereinafter *Results of Redetermination III* ]. In its response, Wieland urged Commerce to recalculate the 27.48% BIA rate. (Letter from Arnold & Porter to Comm. Dep't of 11/13/95, at 6; Response of Def.–Intervenors to Comments of Pls. Contesting Comm. Dep't Redetermination on Remand, at 3–4 [hereinafter Def.–Intervenors' Response].) Wieland argued that the BIA rate should equal the highest margin resulting from the latest remand, not the highest margin existing in the initial final results. *Results of Redetermination III* at 6 (Comment 9). Commerce agreed and substantially reduced the BIA rate, explaining that "[c]onsistent with the BIA methodology which governed the original administrative review of this order, we have used the highest weighted-average margin for a Wieland company resulting from this remand as the applicable BIA[.]" *Id.* While the BIA *rate* for unmatched sales changed as a result of the remand, the methodology used remained the same.

Plaintiffs have appealed Commerce's decision to change the BIA rate applied to unmatched sales. They argue that Commerce was not authorized to do so because the BIA issue was not one of the subjects of this court's third remand order. *See Hussey III*, 19 CIT at ——–——, 895 F.Supp. at 314–15 (describing remand order). In the alternative, they argue that if Commerce is permitted to update the BIA rate based on revisions to Wieland's margins on remand, Commerce must also update its BIA methodology. (Response by Pls. to Ct.'s Aug. 21, 1996 Supplemental Questions at 1–2.) They urge the court to require Commerce to follow its "current practice," a two-tier methodology approved by the Court of Appeals for the Federal Circuit. (Pls.' Br. at 6–9;) *see Allied–Signal Aerospace Co. v. United States*, 28 F.3d 1188, 1190–91 (Fed.Cir.1994), *cert. denied,* 513 U.S. 1077, 115 S.Ct. 722, 130 L.Ed.2d 628 (1995); *see also, e.g., NSK Ltd. v. United States*, 20 CIT ——, ——–—— ——, 939 F.Supp. 901, 904–05 (1996). For the reasons indicated below, plaintiffs' appeal is denied.

## DISCUSSION

Plaintiffs argue that Commerce should preserve the 27.48% BIA rate for unmatched sales calculated in the original *Final Determination.* Commerce did not calculate new margins in the first remand results because it had decided to request that the court reopen the record for further investigation. *Final Results of Redetermination Pursuant to Court Remand: Hussey Copper, Ltd. et al. v. United States, Slip Op. 93–179,* at 3 (Jan. 10, 1994). Commerce did calculate new margins in the second remand. At that time, Wieland commented that the BIA rate for unmatched sales should equal the highest margin resulting from the remand, apparently out of concern that Commerce would adopt a higher margin taken from a subsequent administrative review. *Final Results of Redetermination Pursuant to Court Remand: Hussey Copper, Ltd. et al. v. United States, Slip Op. 94–81,* at 7 (Sept. 13, 1994) (Comment 5). Commerce agreed with Wieland, and stated that it would use as BIA "the highest adjusted margin resulting from this remand of the first administrative review[.]" *Id.* The parties disagree as to whether Commerce actually adjusted the BIA rate in the second remand or inadvertently neglected to do so. (*Cf.* Def. Br. at 4 *and* Def.–Intervenors Br. at 4–5.) In the draft version of its third remand results, Commerce used the original 27.48% BIA rate instead of an updated version. (Pls.' Br. at 4 (quoting Weiland response to draft remand results (Nov. 13, 1995)).) When Wieland brought this to Commerce's attention, Commerce reduced the rate to reflect the highest weighted-average margin resulting from the third and most recent remand. (*Results of Redetermination III* at 6–7.) It is that reduced rate that plaintiffs contest.

■ Plaintiffs' objections come too late. Plaintiffs had thirty days from the filing of the second remand results to file comments with the court in response. *Hussey II,* 18 CIT at 460–61, 852 F.Supp. at 1122. The comments filed with Commerce and with the

court did not challenge Commerce's statement that it would use as BIA the highest adjusted margin found in the remand results. *See* Letter from Law Firm of Collier Shannon to Sec. of Commerce of 8/31/94 (comments on Draft Remand Results); Letter from Law Firm of Collier Shannon to Sec. of Commerce of 7/18/94 (comments on Wieland's response to Commerce's July 5, 1994 remand questionnaire) (containing no objection to updating BIA rate); *see also* Pls.' Mot. Further Remand (Nov. 3, 1994); Pls.' Reply to Resp. by U.S. in Partial Opp'n Pls.' Mot. Further Remand (Dec. 19, 1994) (both filed in conjunction with *Hussey III* ) (also containing no objection to updating BIA rate). Since plaintiffs did not raise the issue during the second remand, their contention that Commerce should preserve the BIA rate calculated in the *Final Determination* is untimely and therefore moot.

■ Had the claim been timely, it would not have prevailed, as Commerce correctly revised the BIA rate to reflect the changes ordered by the court. Plaintiffs' assertion that on remand Commerce may only address issues specified in the remand order is accurate. (Pls.' Br. at 5.) Nonetheless, a remand order would be meaningless if Commerce were not permitted to recalculate its final results after changing the underlying formulas. In its original *Final Determination,* Commerce selected as BIA "the highest weighted-average margin for any member of the Wieland Group." *Final Determination* at 60,089. In its third remand, the court ordered Commerce to recalculate those dumping margins, eliminating three methodological errors. *Hussey III,* 19 CIT at ——, 895 F.Supp. at 314–15. As a result, the highest weighted-average margin found no longer equaled 27.48%. (Def.–Intervenors' Response at 6.) It was within the scope of the remand order for Commerce to recalculate any figure based on margins that the remand order had held were not in accordance with law. Commerce therefore acted within its discretion when it reassessed "the highest weighted-average margin for any member of the Wieland Group" once those margins were properly calculated.

Plaintiffs rely on *D & L Supply Co. v. United States,* 19 CIT ——, 888 F.Supp. 1191 (1995) to support their argument. *D & L Supply* addressed the question of "[w]hether Commerce may maintain a BIA rate based upon a margin that has since been recalculated pursuant to Court remand." *Id.* at ——, 888 F.Supp. at 1194. In that case, Commerce selected as BIA the highest rate assigned to any company in a previous review. The 1989–1990 rate on which Commerce relied was subsequently appealed, remanded, and reduced from 92.74% to 31.05%. *D & L Supply* appealed Commerce's decision to retain the 92.74% BIA rate for the 1990–1991 review rather than recalculate it to reflect the change in the prior results. The court held that Commerce's action was permissible because "[a]t the time of its selection, the BIA applied in this case was the most accurate and up-to-date, consistent with Commerce's methodology." *Id.* at ——, 888 F. Supp. at 1197. In so holding, the court noted that the fundamental purpose of the BIA statute is "to facilitate the determination of dumping margins as accurately as possible within the confines of extremely short statutory deadlines." *Id.*

■ *D & L Supply* is not determinative here. The court in that instance did not require Commerce to update its selection of BIA in light of subsequent proceedings, but neither did it hold that Commerce could never do so. To issue such a blanket prohibition would hinder a basic purpose of BIA, "facilitat[ing] the determination of dumping margins as accurately as possible." *Id.* Commerce may alter its selection of BIA on the basis of new information if the agency in its discretion decides that the new rate is more probative of current conditions. In addition, it should be noted that *D & L Supply* was concerned with a BIA rate derived from a separate administrative review. Here, we are considering a revision based on information recalculated on remand in the same case. Clearly, *D & L Supply* does not require Commerce to maintain a BIA rate based upon a margin in the same administrative review that has been recalculated pursuant to a remand order.

Plaintiffs also argue that if Commerce is permitted to change the BIA rate in its latest redetermination, it must use its current two-tier methodology to select a new rate. This argument is also untimely. All claims challenging a final determination must be made within thirty days of its publication. 19 U.S.C. § 1516a(a)(2). Commerce first established "the highest weighted-average margin for any member of the Wieland Group" as BIA in the *Final Determination*. *Final Determination* at 60,089. It has used that methodology consistently throughout this litigation. At no time before this appeal did plaintiffs argue that Commerce should not use "the highest weighted-average margin for any member of the Wieland Group" as BIA.

In an effort to show that the methodology issue was raised in a timely manner, plaintiffs cite various BIA claims raised during the litigation. They note that their complaint alleged generally that Commerce's comparison of United States and home market sales failed to adjust accurately for differences in the merchandise. (Pls. Hussey *et al.* Complaint ¶¶ 5(a), 5(b), 5(g) (1/24/92).) They previously argued that where Wieland did not adequately indicate differences in alloy composition, Commerce should have used adverse BIA instead of London Metal Exchange data. *Final Determination* at 60,-089 (Comment 6); (Pls. Hussey *et al.* R. 56.1 Br. at 14–15 (7/15/92).) They also contended that Commerce should interpret the phrase "highest weighted-average margin" to mean the highest transaction margin, not the highest company margin, and that the record contained weighted-average margins higher than 27.48%. *Final Determination* at 60,089 (Comment 5); (Pls. Hussey *et al.* R. 56.1 Br. at 15 n.7 (7/15/92).) The court ruled against the plaintiffs on each issue. *Hussey I*, 17 CIT at 998–99, 1010, 834 F.Supp. at 419, 427.

While each of these claims was BIA-related, none challenged Commerce's choice of methodology, its decision to use as BIA "the highest weighted-average margin for any member of the Wieland Group." On the contrary, the latter two are based on the premise that Commerce used an appropriate methodology, but miscalculated the results.

Plaintiffs made no other BIA-related claims within thirty days of publication of the *Final Determination*. "[J]udicial economy, fairness to the parties and the need to fulfill Congress' intent of prompt resolution of these matters requires that errors of methodology ... be raised from the outset, unless some extraordinary factor supports relief at a later date." *Ipsco, Inc. v. United States*, 14 CIT 736, 739, 749 F.Supp. 1147, 1150 (1990), *aff'd in relevant part*, 965 F.2d 1056 (Fed.Cir.1992). Plaintiffs declined to propose any extraordinary factor that might convince the court to permit them to raise the issue at this late date. (Pls. Suppl. Br. at 7.) Accordingly, the court finds that plaintiffs' objections to the BIA methodology used are untimely, and the court will refrain from addressing them.

Assuming, without so deciding, that the two-tier policy would have been applicable to this case had the issue been timely raised, plaintiffs would not necessarily have obtained another remand. The fact that a methodology may appear to be a *de facto* BIA "policy," by virtue of its consistent use, does not preclude Commerce from using a different methodology if it determines in its discretion that the circumstances so warrant. *Allied–Signal Aerospace Co. v. United States*, 28 F.3d 1188, 1191 (Fed.Cir.1994); *see also, e.g., NSK Ltd. v. United States*, 20 CIT ——, ——, 939 F.Supp. 901, 905 (1996) (citing *Allied–Signal* ) (noting that in absence of statutory directive, "Commerce's determination of what constitutes best information must be accorded considerable deference."). As Commerce's decision to revise the BIA rate on remand was not an abuse of that discretion, it is probable that no further remand would have been necessary in any event.

## CONCLUSION

Commerce's *Results of Redetermination III* of December 8, 1995 is sustained in its entirety.

## JUDGMENT ORDER