**TAIWAN INTERNATIONAL STANDARD ELECTRONICS, LTD. ("TAISEL"), Plaintiff,**

v.

**UNITED STATES and the U.S. Department of Commerce, Defendants.**

Slip Op. 97–40.
Court No. 92–08–00532.

United States Court of International Trade.

April 4, 1997.

---

**36.** This matter is proceeding to trial on a Fourth Superseding Indictment, which was issued on June 20, 1996.

Ablondi, Foster & Sobin, P.C. (Italo H. Ablondi, Peter J. Koenig, F. David Foster, Washington, DC, and Robert Maguire), for plaintiff.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division,

U.S. Department of Justice (Cynthia B. Schultz); and Office of the Deputy Chief Counsel for Import Administration, U.S. Department of Commerce (Priya Alagiri), Washington, DC, of counsel, for defendants.

## OPINION & ORDER

AQUILINO, Judge:

Counsel for the plaintiff have interposed a motion which the court deems made pursuant to CIT Rule 56.2 for judgment upon the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan; Final Results of Antidumping Duty Administrative Review*, 57 Fed.Reg. 29,283 (July 1, 1992). For the reasons discussed hereinafter, the court in accordance with subsections (a)(2) and (b)(1)(B) of 19 U.S.C. § 1516a (1992) and with 28 U.S.C. § 1581(c) and § 2643(c)(1) concludes that this motion must be granted.

### I

The motion represents that within a year of its commencement TAISEL's attempt at marketing its merchandise in the United States had become "a disaster, with massive returns of defective product", whereupon it "exited the SBTS business." [1] Nonetheless, the company (and others) requested that the ITA conduct an administrative review of its outstanding antidumping-duty order [2],

> not to affect the dumping duty deposit rate for future SBTS entries. Rather, Taisel's basic concern was that its now former U.S. SBTS customer, Allied Industrial and Engineering Corporation ..., the importer of record ..., not be subject to dumping duties on defective SBTS which Allied received and then shipped back to Taisel in Taiwan. The vast bulk (82%) of SBTS that Taisel shipped ... was returned to Taiwan since it was defective. More generally, [it] also did not want the importer of record to be excessively penalized as far

---

1. Plaintiff's Memorandum, p. 8. SBTS is the record abbreviation for the company's merchandise, namely, small business telephone systems and subassemblies thereof.

2. *See* 54 Fed.Reg. 50,790 (Dec. 11, 1989).

as dumping duties by Taisel's business misfortune.

Plaintiff's Memorandum, pp. 8–9 (footnotes omitted). The motion further shows that after commencement of the agency review and receipt of a questionnaire in connection therewith, TAISEL contacted the ITA to confirm that its returned goods[3] were entitled to duty drawback and would not be subjected to antidumping duties. Thereafter, the company submitted a lengthy response to the questionnaire in a timely manner. *See* Plaintiff's Appendix, Attachment 1.

Among other things, that response included a statement by TAISEL's export manager, attempting to describe the circumstances of the failed business attempt, which according to him "demonstrated no dumping in the U.S.A. in intent or in fact." *Id.* at 7. Whatever the intent, the statement reported:

> Since our small business ... never stabilized into a smooth running operation there were no specific and systematic accounting data ... established before the product line was terminated. That is the data for the subject product [are] mixed together with all other records. To reconstruct the data to answer your questionnare is practically impossible.... To try to retrieve and reconstruct the necessary information in accordance with the instructions in your questionnaire would seriously disrupt our on-going operations. We, therefore, will not participate in the review as structured.

*Id.* at 6–7. *See also id.* at 5. Whereupon counsel's letter of transmittal made the following points:

1. Per discussions with Department officials, Taisel states which ... SBTS shipments ... were later shipped out of the United States, and includes supporting documents. Taisel understands that, for this SBTS, Taisel does not have to respond to the Department's questionnaire.

2. Per *Asociacion Colombiana de Exportadores de Flores v. United States*, Slip Op. 89–92 (CIT June 29, 1989), Taisel states its reasons for not responding to the Department's questionnaire for the few Taisel SBTS units which remain in the United States. There, the court found that this information should be given for best information available ("BIA") decisions.

3. Finally, per *Rhone Poulenc v. United States*, 899 F.2d 118[5], 1190–91 (Fed. Cir.1990), Taisel offers the "most probative" evidence of the appropriate BIA dumping margin for Taisel SBTS which remained in the United States.

*Id.* at 1.

In its *Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan; Preliminary Results of Antidumping Duty Administrative Review*, 56 Fed. Reg. 57,613 (Nov. 13, 1991), the ITA recognized TAISEL's statement but also responded that it had resorted to best information otherwise available within the meaning of 19 U.S.C. § 1677e(c), leading to a margin of 129.73 percent for the company, which was the highest rate found during the agency's investigation of alleged sales at less than fair value. *See* 54 Fed.Reg. at 42,550. When TAISEL reacted that the ITA "should not assign a punitive BIA rate to sales by a cooperating company that is unable to respond for reasons unrelated to the antidumping case"[4] but should assign a rate "that is an intelligent approximation of ... actual dumping margins"[5], the agency reaffirmed the foregoing margin per the following published rationale:

> ... [W]henever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, we use BIA. In its response and case brief Taisel explained that it was unable to respoind [*sic*] to the Department's questionnaire since its SBTS business no longer exists. Taisel, however, had sales during the period of review which were subject to the antidumping order. Taisel is not excused from re-

---

3. *See* Record Document 32; Plaintiff's Appendix, Attachment 1, Tab B, pp. 16–19 and Tab C, pp. 57, 61, 64, 67. *Cf.* Plaintiff's Memorandum, Attachment 1.

4. 57 Fed.Reg. at 29,287.

5. *Id.*

sponding to the questionnaire with respect to these sales simply because Taisel no longer produces SBTS. When a respondent fails to respond to the Department's questionnaire, it is the Department's practice to use as BIA the higher of: (1) The highest of the rates found for any firm in the LTFV investigation; or (2) the highest rate found in any administrative review. Accordingly, Taisel's final BIA rate is 129.73 percent, the highest calculated rate from the LTFV investigation.

57 Fed.Reg. at 29,287. When the company also objected that any antidumping rate apply only to its merchandise remaining in this country, the ITA disagreed:

> ... Due to the inability of Taisel to report its sales in response to the Department's questionnaire, we have not been able to assemble a list on an entry-by-entry basis in order to instruct Customs. We can only instruct Customs based on our analysis in an administrative review. Although it is our practice to exclude verifiable sales that were canceled and re-exported, Taisel has not provided an adequate response for us to make such an exclusion from our finding.

*Id.*

## II

Plaintiff's motion at bar takes the position that the foregoing agency reasoning is unsupported by substantial evidence on the record or otherwise not in accordance with law within the meaning of 19 U.S.C. § 1516a(b)(1)(B) (1992).

## A

■ On its face, the response with respect to the returned merchandise admits that ITA practice is to exclude sales that were canceled or re-exported. Hence, the focus of the court is whether there is substantial evidence on the record in support of the agency's determination not to exclude such sales by the plaintiff. On this issue, there can be no quarrel with the long-standing judicial definition of substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S.

197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). And "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Nor can there be any dispute with the rule that parties which do not cooperate with the government do so at their own peril. *See, e.g., NTN Bearing Corp. of America v. United States*, 19 CIT ——, ——, 905 F.Supp. 1083, 1088–89 (1995); *Mitsuboshi Belting Limited v. United States*, 21 CIT ——, —— – ——, Slip Op. 97–28, 1997 WL 118397 (March 12, 1997).

As this court understands the determination under review, the ITA simply took TAISEL's statement of inability to participate at face value:

> Therefore, Commerce did not conduct an administrative review of Taisel's SBTS entries in the United States and, accordingly, did not reach a conclusion with regard to Taisel's canceled sales. Justifiably, Commerce could not instruct Customs with regard to those entries on an entry-by-entry basis....
>
> Generally, it is Commerce's practice to *"exclude verifiable sales that were canceled and re-exported."* ... In this case, however, Taisel refused to respond to the questionnaire in the format required by Commerce.... As a consequence, Commerce never analyzed Taisel's sales or verified Taisel's claims that certain sales were canceled. Thus, Commerce was unable to instruct Customs to exclude from antidumping duties certain entries which allegedly covered cancelled sales.

Defendants' Memorandum, p. 18 (citations omitted, emphasis in original). That the agency opted for this approach does not permit the court to do so. That is, it has had to review the entire record developed, which reveals the Antidumping Request for Information, Form ITA346–P, provided to the parties. While more refined than other interrogatories with which the court is familiar, they do not seem as demanding format-wise as are IRS Form 1040 or FTC Form C4, for example. Whatever their exact context, con-

trary to the impression TAISEL's choice of words of deliverance may have created, the company did indeed produce much more than a "mere scintilla" [6] of evidence about its returned goods. *See generally* Plaintiff's Appendix, Attachment 1, Tabs B and C. While this evidence is not presented in the format preferred by Section C (Sales to the United States) of the ITA's questionnaire, it also does not favor the agency's determination on the precise issue the plaintiff now appeals. In fact, the record as filed lacks substantial evidence in support of the defendants on that question.

### B

■ As for those goods not returned to Taiwan as defective, the plaintiff has recognized from the beginning, as it must have, the authority of the agency to resort to best information otherwise available in setting an antidumping margin for them. The disagreement at bar is over the selection made. In its preliminary determination, the ITA had stated that, when it applied its so-called two-tier approach to best information otherwise available, it did so for "the same class or kind of merchandise in the same country of origin in accordance with section 776(c) of the Tariff Act." 56 Fed.Reg. at 57,613. Yet, in the end, the agency did not adhere to this representation. That is, the margin at bar was derived from data for Japan, not Taiwan. *Compare Final Determination of Sales at Less Than Fair Value: Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan*, 54 Fed.Reg. 42,543 (Oct. 17, 1989) (*viz.* Taiwan Nitsuko Co., Ltd.), *with* 57 Fed.Reg. at 29,287, *supra.* Indeed, the ITA had even opined in that determination that that rate was "inappropriate", at least for some Taiwan companies, to wit:

> ... [T]he "All Others" rate was based solely on Taiwan Nitsuko's BIA rate. For purposes of this final determination, however, the Department has determined that the application of the BIA rate for Taiwan Nitsuko to the "All Others" rate is inappropriate. The Department does not believe that the BIA rate calculated for Taiwan Nitsuko is representative of other unnamed Taiwan manufacturers because, as previously explained, the Department applied section 773(d) of the Act (the MNC provision) to calculate Taiwan Nitsuko's BIA rate. This resulted in comparisons being based only on merchandise produced and sold in Japan to that produced in Japan and sold in the United States.

> Instead, the Department has determined that it is more appropriate to apply the margin of SMS, the only responding company from Taiwan, as the "All Other" rate. For SMS, we calculated a dumping margin of 0.00%, which will be applied to the "All Others" rate for cash deposit purposes. We note, however, that the Department has determined that SBTS from Taiwan are being, or are likely to be, sold in the United States at less than fair value. The only company excluded from this determination is SMS. Therefore, all companies subject to the "All Others" rate are covered by the Department's affirmative determination, but will be subject to a cash deposit of 0.00%.

54 Fed.Reg. at 42,550.

Counsel are now left to argue that "Commerce determines the applicable BIA rate on a case-by-case basis, rather than by adherence to a particular practice" [7], and that it "never intended its rationale in determining the 'all others' rate should be followed in determining a BIA rate." Defendants' Memorandum, p. 17. But the foregoing determination is part of this case, not undermined by anything of record since its publication of which this court is aware. While the ITA is possessed of broad discretion in carrying out its daunting responsibilities, the exercise thereof is not boundless. For example, courts have held that its resort to best information otherwise available may not be "puni-

---

**6.** *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938).

**7.** Defendants' Memorandum, p. 12.

tive", which *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1190 (Fed.Cir.1990), defined as the agency's rejection of low-margin information in favor of high-margin information that is demonstrably less probative of current conditions. To the extent the agency has employed a two-tier approach in this and other proceedings, it has been affirmed by the courts. *See, e.g., Allied–Signal Aerospace Co. v. United States,* 996 F.2d 1185 (Fed.Cir.1993); *Mitsuboshi Belting Limited v. United States, supra.* Nonetheless, in *Allied–Signal* the court of appeals concluded that the ITA erred in imposing first-tier information on a party in circumstances not dissimilar to those presented herein, *e.g.*:

> ... [T]he record is clear that SNFA did not refuse to cooperate. Prior to the initiation of the administrative review, officials from SNFA and the ITA discussed proposals for a simplified process of review for those companies like SNFA that were in the "all others" category of the LTFV investigation. SNFA concluded that it could not adequately respond to the questionnaire because the particular costing system it had in place and its limited accounting resources made compilation of constructed value data difficult. Additionally, its small-volume production of specialized, custom-made bearings allegedly led to an absence of home market sales data.
>
> SNFA alerted the ITA to its difficulty in responding to the questionnaire and indicated its willingness to participate in a simplified review process. Although the ITA acknowledged as much in its correspondence with SNFA and expressed interest in seeking to accommodate SNFA, it ultimately concluded that SNFA had refused to cooperate.... However, in view of the undisputed fact that SNFA supplied as much of the requested information as it could and offered to provide the remaining information in a simplified form, we must conclude that it was unreasonable for the ITA to have characterized SNFA's behavior as a refusal to cooperate.

996 F.2d at 1192. Whereupon that case was remanded to the ITA. *See Allied–Signal Aerospace Co. v. United States,* 17 CIT 754, *aff'd,* 17 CIT 1124, 833 F.Supp. 935 (1993), *aff'd,* 28 F.3d 1188 (Fed.Cir.1994), *cert. de-*

*nied,* 513 U.S. 1077, 115 S.Ct. 722, 130 L.Ed.2d 628 (1995).

After careful review of the record at hand and consideration of the arguments of opposing counsel made thereon, the court cannot and therefore does not conclude that relief different from that in *Allied–Signal* is warranted herein.

### III

In view of the foregoing, plaintiff's motion for judgment on the ITA record must be granted to the extent of remand to that agency for further proceedings not inconsistent with this opinion. The defendants may have 90 days for such proceedings and to report the results thereof to the court, whereupon the plaintiff may file written comment(s) within 30 days.

So ordered.